# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA INFORMED CONSENT ADVOCATES, INC.** | : |
| **Plaintiff,** | : |
| v. | : |
| | : **DOCKET NO.** |
| **UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM** <br> 3400 Spruce Street <br> Philadelphia, PA 19104 | : **JURY TRIAL DEMANDED** |
| and | : |
| **SCOTT KETCHAM,** <br> United States Secretary of Labor <br> 200 Constitution Avenue, N.W. <br> Washington, D.C. 20210 | : |
| and | : |
| **XAVIER BECERRA** <br> United States Secretary of <br> Health and Human Services <br> 200 Independence Avenue, S.W. <br> Washington, D.C. 20210 | : |
| **Defendants.** | : |

## **COMPLAINT**

This is a civil action seeking damages against State actors for committing acts, under color of law, which deprived Plaintiff of rights secured by the First and Fourteenth Amendments to the United States Constitution, the laws of the United States, and the Constitution and laws of the Commonwealth of Pennsylvania; for constitutional violations that arise out of University of Pennsylvania Health System's vaccine mandate; for Secretary of Labor Scott Ketcham and Secretary of Health and Human Services Xavier Becerra conspiring to introduce regulations under the Occupational Safety and Health Act to violate the First Amendment rights of all Americans by compelling them to engage in political speech.

This civil action arises out of the Defendants' flagrant disregard for the constitutional rights of American citizens in their attempt to compel vaccinations. Through the actions of Defendants' and other non-party individuals and entities, vaccines have been politicized to a point where receiving or declining a vaccine has become a political act in the eyes of the public, and being compelled into discussing one's vaccine status is compelling that person to engage in political speech.

By forcing its employees to disclose their vaccine status, University of Pennsylvania Health System is acting as a state actor when compelling political speech in violation of the First Amendment to the United States Constitution. By requiring workers across America to disclose their vaccination status, Defendants Scott Ketcham and Xavier Becerra are forcing them to engage in un-sought-out, and individually undesirable, political speech in violation of the first amendment.

## **JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

2. This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

3. This Court is authorized to grant Plaintiffs' prayer for temporary, preliminary, and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in this district because Plaintiffs' members suffered damages within the jurisdiction of the Eastern District of PA.

## PARTIES

5. Plaintiff is the Pennsylvania Informed Consent Advocates, Inc. (hereinafter referred to as "Plaintiff."

6. Defendant University of Pennsylvania Health System (hereinafter referred to as "UPHS") is a network of hospitals that serve the Eastern Pennsylvania region.

7. Defendant Scott Ketcham (hereinafter referred to as "Ketcham"), is the U.S. secretary of labor who oversees the Occupational Safety and Health Administration (OSHA).

8. Defendant Xavier Becerra (hereinafter referred to as "Becerra") is the U.S. secretary of Health and Human Services who oversees the Centers for Medicare and Medicaid Services (CMS).

9. Plaintiff is a corporation formed by, and representing the interests of, employees and former employees of UPHS. Plaintiff corporation was formed in Pennsylvania, and its principal place of business is in Pennsylvania.

10. Members of Plaintiff are medical professionals who have chosen, for various reasons, to refuse vaccination, or have refused to disclose their COVID-19 vaccination status to others, and UPHS seeks to coerce Plaintiff members to engage in political speech in compelling such disclosure by threat to their livelihoods, and to the well-being and fiscal security of persons dependent on Plaintiff members' jobs for their survival.

11. Members of Plaintiff have sincere, bona fide beliefs in opposition to the vaccine which are religious, quasi-religious, or personal in nature.

12. All members of Plaintiff are employed by entities with 15 or more employees covered by Title VII, which mandates the reasonable accommodation of sincere religious beliefs.

## FACTUAL BACKGROUND

13. On or about March 25th, 2021, various federal agencies, including the departments of Labor and Health and Human Services began publicity drives to encourage and entice private corporations to act as government agents to require full vaccination as a condition to employment.

14. These efforts have gradually ramped up in intensity culminating with President Joseph R. Biden instructing government agencies overseen by Ketcham and Becerra (OSHA and CMS) to draft regulations to *require* private businesses under their purview to mandate vaccination against COVID-19 thereby making these businesses, if they were not already, government agents and thus government "actors" under the law.

15. The aforementioned mandates are expected to take effect sometime in the near future, though extensive publicity, and the subsequent behavior of UPHS, has demonstrated clearly that UPHS considers the coming formal regulation already *de facto* the law of the land.

16. As an organization with over 100 employees, and a health care provider, UPHS has become a government agent by anticipating and implementing the formal requirements outlined by President Biden. UPHS adopted those requirements in anticipation of formal agency-authored regulations in the future that will formalize what UPHS has already accepted is a presidential decree that it mandate vaccination for all employees.

17. Subsequent to the aforementioned publicity drive, on May 19th, 2021, UPHS began to require all employees (including members of Plaintiff corporation) to fully vaccinate against

SARS-CoV-2 before September 1, 2021 or face adverse employment action, up to and including termination.

18. UPHS then began a harassment/embarrassment/shaming campaign against all unvaccinated employees which continues to this day.

19. Pursuant to its threat to punish the unvaccinated, UPHS has formally dismissed or terminated the contracts of a number of Plaintiff's members.

20. Such corporate disciplinary action is arbitrary, is not easily appealed, and is not narrowly tailored to fulfilling the goals of ending the COVID-19 pandemic.

## COUNT I
## COMPULSION OF POLITICAL SPEECH

21. Plaintiff incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

22. The First Amendment to the U.S. Constitution enshrines the right to free speech for all American citizens.

23. The U.S. Supreme Court has long held that the right to free speech protects against state actors compelling others to express speech, or act in a manner that is fundamentally political in nature.

24. The U.S. Supreme Court has long held that a private entity can become so involved with or encouraged by the state that its conduct is held to be the equal of state action – with a purported private entity standing in the shoes of the state to enforce the state's will.

25. UPHS became a state actor after following the deep and continuous encouragement of various U.S. agencies including the president of the United States, the CDC, the FDA and the EEOC.

26. Alternatively, UPHS became a state actor after following the deep and continuous encouragement of Pennsylvania state officials encouraging private employers to require vaccination.

27. Alternatively, UPHS became a state actor after providing, administering, and requiring federally-funded SARS-CoV-2 vaccinations.

28. The determination of whether an act or a statement is "political" in nature is wholly dependent on how society at large views such act or statement.

29. Because of such dependence, what a society defines as "political" changes as collective mores and sensitivities shift. Therefore, the list of acts and statements society considers "political" is not cast in stone, but ever-changing during the lifespan of the Republic.

30. It is entirely possible, for example, that a previously considered "political act" or "political statement," over time, to lose that political meaning. Conversely, it is also possible for a previously apolitical act or statement to become controversial enough, and partisan enough, to acquire a previously unconsidered political meaning.

31. Disclosing one's status as not vaccinated against the COVID-19 has become politicized in such a way that the expressing of one's opposition has acquired a political meaning: bringing public derision down upon the individual or, in fewer instances, garnering public acclaim for the individual, largely depending on the political beliefs of the public toward coerced governmental action against its citizens.

32. The above-mentioned fact can be proven objectively by showing the correlation between COVID-19 vaccine hesitancy and political party affiliation, and subjectively by showing political commentary acknowledging the partisan nature of the act of vaccination and attitude toward forced vaccination.

33. Because of its intensely toxic political nature, disclosing one's COVID-19 vaccination status holds the intent, weight, and social effect of partisan political speech, and should be treated as such by this Honorable Court.

34. Therefore, state actor UPHS violated the First Amendment of the United States Constitution when it compelled members of Plaintiff to engage in the fundamentally political act of showing proof of COVID-19 vaccination as a pre-requisite for further employment or requiring Plaintiff to disclose a member's unvaccinated status in order to publicly stigmatize such members by equating such a position with political "rightwing extremists," or worse. Regardless, if the member's objection is religious or due to medical risk, the mandate seeks to require Plaintiff members to make a political statement against their will, and potentially against their health and well-being, and subjecting them to public ridicule and contempt.

35. By advancing plans and encouraging employers such as UPHS to require employees to disclose their COVID-19 vaccination status, Defendants Ketcham and Becerra are conspiring with one another and UPHS to violate the First Amendment rights of Plaintiff's members.

**COUNT II**
**VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

36. Plaintiff incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

37. The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the State from abridging Plaintiff's members rights to free exercise of religion.

38. UPHS has a constitutional duty to grant reasonable religious exemptions to all employees who held an honest, deeply held belief in opposition to COVID-19 vaccinations.

39. UPHS already had policies and procedures in place to review religious exemptions for other vaccines, but chose instead to require new and far more restrictive applications for the COVID-19 vaccine relative to other vaccines further demonstrating that UPHS is a willing participant in the state's infringement of the constitutional rights of its citizens.  The First Amendment exists as a check on the power of Congress to enforce the will of the Congress (and the President) against American citizens. By application of the Fourteenth Amendment, those same checks are imposed on state legislatures (and governors).  The United States cannot subvert those checks on it powers sought to be used against its own citizens by coopting agents into government actors as it seeks to do here with UPHS acting the pawn.

40. UPHS has made multiple formal statements to employees demonstrating the COVID-19 "new" system for approving or denying religious exemptions to vaccination is arbitrary, could result in employees who previously held a religious exemption relative to other vaccines to be denied in the instance of the COVID-19 vaccine, because UPHS, in its role as government agent advancing the government's political agenda, needed the special COVID-19 religious exemption policy to be special and distinct in order to limit or eliminate the granting of exemptions to further advance the state's interests.

41. UPHS arbitrarily denied religious exemption applications from members of Plaintiff corporation, despite the fact that members applying held longstanding, deeply felt religious beliefs in opposition to vaccination for COVID-19.

42. UPHS allowed hospital leadership to decide whether or not an employee holds a bona fide, deeply held, religious belief in opposition to the COVID-19 vaccine, despite said leadership being wholly unqualified by any objective measure to make such a determination.

43. UPHS inconsistently applied its religious exemption policies by being on-average more willing to approve exemption applications from employees it saw as more valuable to their day-to-day operations.

44. UPHS thus violated the religious freedoms of members of Plaintiff guaranteed them by the free exercise of religion clause of the First Amendment.

45. By encouraging and pursuing to compel employers such as UPHS to require vaccination without any religious exemption, Defendant Becerra conspired to violate the First Amendment rights of Plaintiff's members.

### COUNT III
### VIOLATION OF THE RIGHTS TO PRIVACY AND BODY AUTONOMY FOUND IN THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

46. Plaintiff incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

47. The United States Supreme Court has long recognized a right to privacy and body autonomy written into the Fourteenth Amendment to the U.S. Constitution.

48. As state actors, UPHS, and Becerra hold a constitutional duty to not violate Plaintiff's members rights to privacy and body autonomy.

49. By compelling employees to vaccinate under the threat of dismissal, UPHS violated the Fourteenth Amendment rights of Plaintiff's members.

50. By encouraging and planning to compel employees to vaccinate under the threat of dismissal, Becerra conspired and continues to conspire to violate the Fourteenth Amendment rights of Plaintiff's members.

### COUNT IV
### WRONGFUL DISMISSAL IN VIOLATION OF PENNSYLVANIA PUBLIC POLICY

51. Plaintiff incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

52. Pennsylvania law allows for courts to grant equitable and monetary relief when an at-will employee's dismissal violates public policy.

53. UPHS's arbitrary and discriminatory behavior has caused great psychological and monetary harm to members of Plaintiff in a manner that clearly violates public policy through disregard of Pennsylvania religious freedom law and compulsion of political speech.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter Judgment in their favor and against Defendants and award Plaintiff the following relief:

   a. An Order enjoining UPHS from continuing to require proof of COVID vaccination as a condition for employment;

   b. An Order enjoining Becerra, and Ketcham from promulgating and enforcing the planned regulations-at-issue as long as they are in violation of the First and Fourteenth Amendments to the United States Constitution.

   c. An Order enjoining Becerra, and Ketcham form promulgating and enforcing any vaccine regulation that would violate the First and Fourteenth Amendments to the United States Constitution.

   d. Award members of Plaintiff compensatory damages for their losses caused by UPHS's activities and employment back, if Plaintiff members so desire;

   e. Award Plaintiff their costs and counsel fees; and

   f. Award any additional and further relief the Court deems appropriate.

**VAN DER VEEN, HARTSHORN & LEVIN**

DATE: 10/5/2021

BY: /s/ Bruce L. Castor Jr._____
Bruce L. Castor, Jr.
Attorney for Plaintiff

DATE: 10/5/2021

BY: /s/ Michael T. van der Veen_____
Michael T. van der Veen,
Attorney for Plaintiff