**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA INFORMED CONSENT ADVOCATES, INC.,** | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM;** | : | CIVIL ACTION NO. 5:21-CV-04415-JLS |
| **SCOTT KETCHAM, UNITED STATES** | : | |
| **SECRETARY OF LABOR; XAVIER** | : | |
| **BECERRA, UNITED STATES SECRETARY** | : | |
| **OF HEALTH AND HUMAN SERVICES,** | : | |
| | : | |
| Defendants. | : | |

**MOTION TO DISMISS COMPLAINT BY
<u>DEFENDANT UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM</u>**

Defendant University of Pennsylvania Health System (UPHS) hereby moves, pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Complaint for lack of

subject matter jurisdiction and failure to state a claim upon which relief can be granted.  In support,

UPHS incorporates and relies on the accompanying Memorandum of Law.

Respectfully submitted,

*/s/ Aliza R. Karetnick*

Aliza R. Karetnick (Attorney I.D. No. 82395)
Burt M. Rublin (Attorney I.D. No. 32444)
Diana M. Joskowicz (Attorney I.D. No. 325285)
Shawn F. Summers (Attorney I.D. No. 327471)
karetnicka@ballardspahr.com
rublin@ballardspahr.com
joskowiczd@ballardspahr.com
summerss@ballardspahr.com

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500

*Attorneys for Defendant University of Pennsylvania Health System*

Dated: November 3, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA INFORMED CONSENT ADVOCATES, INC.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM;** | : | CIVIL ACTION NO. 5:21-CV-04415-JLS |
| **SCOTT KETCHAM, UNITED STATES SECRETARY OF LABOR; XAVIER BECERRA, UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES,** | : | |
| | : | |
| Defendants. | : | |

**[PROPOSED] ORDER**

AND NOW, this ___ day of _____, 2021, upon consideration of the Motion to Dismiss Complaint by Defendant University of Pennsylvania Health System, and the opposition thereto, it is HEREBY ORDERED that:

1.      The motion to dismiss is **GRANTED**;

2.      The Complaint is dismissed **WITH PREJUDICE**.

BY THE COURT:

_____

Jeffrey L. Schmehl, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA INFORMED CONSENT ADVOCATES, INC.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM;** | : | CIVIL ACTION NO. 5:21-CV-04415-JLS |
| **SCOTT KETCHAM, UNITED STATES SECRETARY OF LABOR; XAVIER BECERRA, UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES,** | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT
BY DEFENDANT UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL BACKGROUND .......................................................................... 2

III.   LEGAL STANDARD ................................................................................... 3

IV.   ARGUMENT ................................................................................................ 4

    A.    Plaintiff Fails to State Constitutional Claims Upon Which Relief Can Be Granted.......................................................................................... 4

         1.    UPHS is not a State Actor........................................................... 4

         2.    Disclosure of Vaccination Status is not "Compelled Political Speech." ..................................................................................... 8

         3.    Plaintiff's Members Have No First Amendment Right to a Religious Exemption to the Vaccine Mandate........................... 11

         4.    Vaccination Mandates Do Not Violate the Fourteenth Amendment. ....... 12

         5.    Plaintiff's Claim for Damages on Counts I–III is Legally Deficient........ 13

    B.    Plaintiff Fails to Satisfy the Requirements for Organizational Standing.............. 13

    C.    Plaintiff Fails to State a Claim for Wrongful Dismissal Under Pennsylvania Law. .................................................................................. 16

         1.    Plaintiff's Wrongful Dismissal Claim is Preempted by the Pennsylvania Human Relations Act........................................ 16

         2.    Plaintiff Fails to Allege a Violation of Clearly Stated Public Policy of the Commonwealth............................................................ 18

V.    CONCLUSION........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*,
   625 F. App'x 169 (3d Cir. 2015) ....................................................................................14, 15

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) ...........................................................................................................7, 8

*Angelico v. Lehigh Valley Hosp., Inc.*,
   184 F.3d 268 (3d Cir. 1999) .................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................3

*Beckerich v. St. Elizabeth Med. Ctr.*,
   No. 21-105, 2021 WL 4398027 (E.D. Ky. Sep. 24, 2021) ...........................................5, 6, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................3

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ...........................................................................................................13

*Blunt v. Lower Merion Sch. Dist.*,
   767 F.3d 247 (3d Cir. 2014) ...............................................................................................15

*Borrell v. Bloomsburg Univ.*,
   870 F.3d 154 (3d Cir. 2017) .................................................................................................7

*Boyer v. Barry*,
   No. 1:030CV-1368, 2004 U.S. Dist. LEXIS 29896 (M.D. Pa. Feb. 24, 2004) ........................8

*Brennan v. Nat'l Tel. Directory Corp.*,
   850 F. Supp. 331 (E.D. Pa. 1994) ......................................................................................17

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
   531 U.S. 288 (2001) .............................................................................................................5

*Bridges v. Houston Methodist Hosp.*,
   No. 21-cv-1774, 2021 WL 2399994 (S. D. Tex. June 12, 2021) ...........................................20

*Chamber of Commerce v. City of Phila.*,
   No. 17-1548, 2017 WL 11544778 (E.D. Pa. May 30, 2017) .................................................15

*City of Phila. v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002)...........................................................................4

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) ......................................................................................9

*Clay v. Adv. Computer Applications*,
   559 A.2d 917 (Pa. 1989) .................................................................16, 17, 18

*Constitution Party v. Aichele*,
   757 F.3d 347 (3d Cir. 2014)...........................................................................4

*Correctional Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ......................................................................................13

*Davis v. Holder*,
   994 F. Supp. 2d 719 (W.D. Pa. 2014) .........................................................13

*Dee v. Marriott Int'l, Inc.*,
   No. 99-2459, 1999 WL 975125 (E.D. Pa. Oct. 6, 1999) .............................17

*Doe v. Banos*,
   416 F. App'x 185 (3d Cir. 2010) ..............................................................9, 10

*Donahue v. Fed. Express Corp.*,
   753 A.2d 238 (Pa. Super. 2000)...................................................................19

*Egli v. Chester Cty. Library Sys.*,
   394 F. Supp. 3d 497 (E.D. Pa. 2019) ............................................................5

*F.F. v. New York*,
   194 A.D.3d 80 (N.Y. App. Div. 2021) ..........................................................9

*Glunk v. Noone*,
   186 F. Supp. 3d 453 (E.D. Pa. 2016) ............................................................8

*Hall v. Horizon House*,
   414 F. Supp. 3d 720 (E.D. Pa. 2019) ............................................................6

*Harris v. Univ. of Mass.*,
   No. 21-cv-11244, 2021 WL 3848012 (D. Mass. Aug. 27, 2021) ...............11

*Harsman v. Cincinnati Children's Hosp. Med. Ctr.*,
   No. 1:21-cv-597, 2021 WL 4504245 (S.D. Ohio Sep. 30, 2021) .................5

*Harvey v. Plains Twp. Police Dep't*,
   421 F.3d 185 (3d Cir. 2005)...........................................................................8

*Highhouse v. Avery Transp.*,
    660 A.2d 1374 (Pa. Super. 1995) ........................................................... 19

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ........................................................................ 1, 12, 19

*Kach v. Hose*,
    589 F.3d 626 (3d Cir. 2009) ........................................................... 5, 6, 7

*Klaassen v. Trustees of Ind. Univ.*,
    No. 1:21-CV-238, 2021 WL 3073926 (N.D. Ind. July 18, 2021) ........................... 12

*Krushinski v. Roadway Express, Inc.*,
    627 F. Supp. 934 (M.D. Pa. 1985) ........................................................... 17

*Manhattan Community Access Corp. v. Halleck*
    139 S. Ct. 1921 (2019) ........................................................................ 5, 6

*McLaughlin v. Gastrointestinal Specialists, Inc.*,
    750 A.2d 283 (Pa. 2000) ........................................................................ 18

*Messina v. Coll. of N.J.*,
    No. 21-17576, 2021 WL 4786114 (D.N.J. Oct. 14, 2021) ............................... 12, 13

*Mikhail v. Pa. Org. for Women in Early Recovery*,
    63 A.3d 313 (Pa. Super. 2013) ........................................................... 19

*Minnesota Voters Alliance v. Walz*,
    492 F. Supp. 3d 822 (D. Minn. 2020) ........................................................... 11

*N.J. Physicians, Inc. v. President of the United States*,
    653 F.3d 234 (3d Cir. 2011) ........................................................... 14, 15

*Nationwide Ins. Indep. Contrs. Ass'n v. Nationwide Mut. Ins. Co.*,
    518 F. App'x 58 (3d Cir. 2013) ........................................................... 15

*Nikolao v. Lyon*,
    875 F.3d 310 (6th Cir. 2017) ........................................................... 12

*Rothrock v. Rothrock Motor Sales, Inc.*,
    883 A.2d 511 (Pa. 2005) ........................................................................ 19

*Rumsfeld v. Forum for Acad. & Inst'l Rights*,
    547 U.S. 47 (2006) ........................................................................ 11

*Shaffer v. Nat'l Can Corp.*,
    565 F. Supp. 909 (E.D. Pa. 1983) ........................................................... 17

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ................................................................................13

*Startzell v. City of Phila.*,
    533 F.3d 183 (3d Cir. 2008) ....................................................................8

*Stephany v. Reading Police*,
    No. 21-CV-1402, 2021 WL 2156396 (E.D. Pa. May 21, 2021) ...............7

*Stull v. Reber*,
    64 A. 419 (Pa. 1906) ..............................................................................20

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................14, 15

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
    309 F.3d 144 (3d Cir. 2002) ....................................................................9

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969) ................................................................................8

*Toll Bros., Inc. v. Twp. of Readington*,
    555 F.3d 131 (3d Cir. 2009) ..................................................................14

*United Food & Comm'l Workers Union Local 751 v. Brown Group*,
    517 U.S. 544 (1996) ..............................................................................14

*Valdez v. Grisham*,
    No. 21-cv-783, 2021 WL 4145746 (D.N.M. Sept. 13, 2021) ................19

*W.B. v. Crossroads Academy-Central St.*,
    No. 4:19-cv-00682, 2019 WL 6257963 (W.D. Mo. Nov. 22, 2019) .........9

*Warner v. United Nat. Foods, Inc.*,
    513 F. Supp. 3d 477 (M.D. Pa. 2021) ....................................................19

*Weaver v. Harpster*,
    975 A.2d 555 (Pa. 2009) ..................................................................16, 18

*Wolks v. Saks Fifth Ave., Inc.*,
    728 F.2d 221 (3d Cir. 1984) ..................................................................17

*Zinman v. Nova Se. Univ.*,
    No. 21-CV-60723, 2021 WL 4025722 (S.D. Fla. Aug. 30, 2021) .........11

**Statutes**

Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 ...........................2, 16, 17, 18

**Other Authorities**

U.S. Const. amend. I ....................................................................................................1, 4, 5, 8, 9, 11

U.S. Const. amend. XIV ...............................................................................................1, 4, 12, 13

Fed. R. Civ. P. 12(b)(6)............................................................................................................3, 4

Fed. R. Civ. P. 12(b)(1).......................................................................................................3, 4, 16

## I.     INTRODUCTION

This case arises from the May 2021 decision of the University of Pennsylvania Health System (UPHS) to institute an employee COVID-19 vaccine mandate, consistent with its longstanding policies requiring employees to be vaccinated against certain communicable diseases, or else receive an exemption.  Plaintiff, a corporation purporting to represent unidentified current and former UPHS employees, has asserted three claims under the United States Constitution and a wrongful dismissal claim under Pennsylvania "public policy," each of which is patently deficient as a matter of law.

*First*, the constitutional claims in Counts I–III fail out of the gate because UPHS is a private institution, not a state actor.  Indeed, as discussed below, courts recently dismissed constitutional claims brought against other private hospital systems that implemented COVID-19 vaccine mandates, correctly holding the hospitals' conduct is not subject to constitutional constraints.

*Second*, requiring employees to show proof of vaccination is not "compelled political speech," as alleged in Count I.  Indeed, such an argument is both illogical, and contrary to established First Amendment jurisprudence and cases specifically holding that disclosure of vaccination status is conduct, not expressive speech.

*Third*, Plaintiff's claim in Count II that UPHS violated the Free Exercise Clause of the First Amendment fails because, as various courts have already held, employers do not have a constitutional obligation to offer a religious exemption to a COVID-19 vaccination requirement. Still, UPHS does offer such an exemption to qualified personnel.

*Fourth*, Plaintiff's claim in Count III that the vaccination mandate violates the Fourteenth Amendment rights to "privacy and body autonomy" is foreclosed by *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), as well as the multitude of recent decisions applying *Jacobson* in the context of COVID-19 vaccination cases.

*Fifth*, the Complaint is fatally flawed for failure to establish organizational standing. Plaintiff does not identify even a single member who allegedly suffered harm because of the vaccination mandate, as required.

*Sixth*, as a threshold matter, Plaintiffs' wrongful dismissal claim in Count IV should be dismissed for failure to exhaust administrative remedies under the Pennsylvania Human Relations Act, which preempts any purported common law claim for wrongful termination.  And, Plaintiff does not even attempt to show the vaccination mandate violates a clearly-stated Pennsylvania public policy overcoming the at-will employment doctrine.

Challenges to COVID-19 vaccination mandates have been summarily rejected by courts around the country, and Plaintiff's specious claims should meet the same fate.

## II.    FACTUAL BACKGROUND

UPHS instituted an employee vaccine mandate on May 19, 2021, to protect UPHS's thousands of patients, staff, and visitors, as well as the community at large, from COVID-19.  The mandate required employees be vaccinated against COVID-19, and show proof of vaccination, by September 1, 2021, or apply for an applicable exemption.  *See* Compl. ¶ 17.  Plaintiff, a Pennsylvania corporation "representing the interests of" unspecified current and former UPHS employees refusing vaccination or refusing to disclose their vaccination status, Compl. ¶¶ 9–10, states just a handful of non-particularized, conclusory facts in support of its claims.

- Plaintiff's members have "religious, quasi-religious, or personal" objections to the COVID-19 vaccine.  Compl. ¶ 11.

- "Subsequent to" the government's vaccination publicity efforts and "in anticipation" of federal regulation, UPHS issued its vaccine mandate.  Compl. ¶¶ 16–17.

- UPHS engaged in a "harassment/embarrassment/shaming campaign against all unvaccinated employees," Compl. ¶ 18, and then terminated an unspecified, unnamed number of Plaintiff's members "to punish the unvaccinated."  Compl. ¶ 19.

- The act of vaccination is "partisan" in nature, Compl. ¶ 32, and UPHS required "more restrictive applications" for COVID-19 religious exemptions than for other vaccines.  Compl. ¶¶ 39–40.

- UPHS denied requests for religious exemptions from some of Plaintiff's members. Compl. ¶ 41.

Notably, Plaintiff does not allege any facts identifying its members or demonstrating they were terminated for failure to comply with UPHS's vaccine mandate.  Nor does Plaintiff provide any support for its contention UPHS adopted a vaccine mandate because of, or in response to, governmental action, or that Plaintiff's members pursued—much less exhausted—required administrative remedies before initiating this action.  Plaintiff's silence speaks volumes about the plausibility of its claims.

## III.   LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court need not accept as true a legal conclusion presented as a factual allegation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not survive a motion to dismiss under Rule 12(b)(6).  *Id.* (quoting *Twombly*, 550 U.S. at 555).[1]

A motion to dismiss based on a lack of standing falls under the ambit of Rule 12(b)(1), since standing implicates a court's constitutional subject-matter jurisdiction to hear the case.

---

[1]     Here, the Complaint is rife with heated rhetoric and hyperbole, but woefully lacking in the specific factual allegations required to satisfy the *Twombly* and *Iqbal* pleading standards.

*Constitution Party v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  This includes a lack of organizational standing.  *See City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 419 n.3 (3d Cir. 2002) (affirming dismissal of claims by organizational plaintiffs under Rule 12(b)(1) for "fail[ure] to satisfy Article III's standing requirements").  The standard of review for a facial challenge to organizational standing is the same as for a motion to dismiss under Rule 12(b)(6).  *Aichele*, 757 F.3d at 358.

IV.   **ARGUMENT**

A.   **Plaintiff Fails to State Constitutional Claims Upon Which Relief Can Be Granted.**

As a threshold matter, Plaintiff can only state constitutional claims against a government actor, not a private entity such as UPHS.  Although Plaintiff argues UPHS magically *became* a state actor by instituting its vaccine mandate, Plaintiff has not adequately pleaded any facts supporting that contention under applicable Supreme Court and Third Circuit precedent.  Nor can it show that disclosure of vaccination status is expressive "speech" protected by the First Amendment, that UPHS was constitutionally obligated to offer a vaccine exemption on religious grounds (it did so anyway), or that Fourteenth Amendment privacy and bodily autonomy prohibits mandatory vaccination to stop the spread of contagious diseases and protect public health and safety.

1.   **UPHS is not a State Actor.**

Plaintiff fails to state any constitutional claims against UPHS because it is a private hospital system, not a state actor subject to the First or Fourteenth Amendments.  As courts have already held in rejecting similar constitutional challenges to COVID-19 vaccine mandates by private hospitals, "a well settled principle of constitutional law is that there exists 'a line between state action subject to [constitutional] scrutiny and private conduct (however exceptionable) that is

4

not.'" *Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-105, 2021 WL 4398027, at *3 (E.D. Ky. Sep. 24, 2021) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297 (2001)); *Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:21-cv-597, 2021 WL 4504245, at *3 (S.D. Ohio Sep. 30, 2021) (approvingly quoting *Beckerich* in a "substantially identical" case). As stated in *Beckerich*, "without establishing that Defendants are state actors, Plaintiffs' constitutional claims cannot stand, and thus have zero likelihood of success on the merits." *Beckerich*, 2021 WL 4398027, at *3.

In *Manhattan Community Access Corp. v. Halleck*, the Supreme Court held as follows:

> [T]he Free Speech Clause prohibits only *governmental* abridgment of speech.  The Free Speech Clause does not prohibit *private* abridgment of speech. . . . [T]his Court's state-action doctrine distinguishes the government from individuals and private entities.  By enforcing that constitutional boundary between the governmental and the private, the state-action doctrine protects a robust sphere of individual liberty.

139 S. Ct. 1921, 1928 (2019) (internal citation omitted).

In the Third Circuit, "the principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quotation omitted). To that end, the Third Circuit has outlined "three broad tests" to determine state action:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Id.* (quotation omitted); *see also Egli v. Chester Cty. Library Sys.*, 394 F. Supp. 3d 497, 505 (E.D. Pa. 2019) (quoting *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928) (laying out a similar three-part test set out by the Supreme Court in a First Amendment case).  Plaintiff has not alleged sufficient facts showing UPHS is a state actor under any test.

(a)    UPHS does not exercise any traditional, exclusive public function.

Courts have held "'a private entity may qualify as a state actor when it exercises powers traditionally exclusively reserved to the state.'"  *Beckerich*, 2021 WL 4398027, at *3 (quoting *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928); *Kach*, 589 F.3d at 646 (same).  "[V]ery few functions fall into that category."  *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1929 (collecting cases).  Accordingly, "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function."  *Id.* at 1931–32 (collecting cases).

"Private hospitals, no matter how much federal funding they may receive, are generally not state actors for purposes of constitutional questions."  *Beckerich*, 2021 WL 4398027, at *3; *accord Hall v. Horizon House*, 414 F. Supp. 3d 720, 722 (E.D. Pa. 2019) (collecting cases showing medical facilities are not made state actors by receipt of government funding or imposition of government licensing and regulation).  The Complaint is devoid of any allegation showing UPHS has performed "traditional, exclusive public function[s]."  *Manhattan Cmty. Access Corp*., 139 S. Ct. at 1931.  Rather, Plaintiff's constitutional claims rely on the single assertion that "UPHS became a state actor after providing, administering, and requiring federally-funded SARS-CoV-2 vaccinations," Compl. ¶ 27, which does not come remotely close to demonstrating UPHS is a state actor under governing precedents.  This forecloses Plaintiff's three constitutional claims.

(b)    UPHS is not acting with the help of or in concert with government officials.

Plaintiff also cannot succeed on the theory that UPHS instituted its vaccine mandate with the help of or in concert with any government officials.[2]  "[T]o support a finding of state action,

---

[2]    Aside from one stray and utterly conclusory reference to "Pennsylvania state officials encouraging private employers to require vaccination," Compl. ¶ 26, Plaintiff's Complaint relies entirely on the alleged actions of the federal government.  Though this has significant implications

'the government must be responsible for the specific conduct of which the plaintiff complains.'" *Stephany v. Reading Police*, No. 21-CV-1402, 2021 WL 2156396, at *3 (E.D. Pa. May 21, 2021) (quoting *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017)).  It bears emphasis that "'[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action.'"  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)).  While the Complaint refers to unspecified "publicity" efforts concerning COVID-19 vaccinations and anticipated forthcoming regulation by the federal government, *see* Compl. ¶¶ 13–17, Plaintiff does not and cannot allege any facts supporting the Complaint's conclusory allegation that UPHS adopted its COVID-19 vaccine mandate in *May 2021* because of unspecified and still-unenacted federal regulation.  Indeed, Plaintiff does not allege any government official even communicated with UPHS regarding a vaccine mandate.  On the contrary, as Plaintiff itself admits, UPHS has a longstanding policy requiring its employees to receive certain vaccinations, subject to certain exemptions.  *See* Compl. ¶ 39.  Thus, Plaintiff has not alleged facts showing UPHS instituted its vaccine mandate with the help of or in tandem with government officials.

(c)    <u>The Government is not a joint participant with UPHS.</u>

Finally, Plaintiff fails to allege any facts showing "interdependence" between the government and UPHS such that the government "must be recognized as a joint participant" in UPHS's vaccine mandate.  *Kach*, 589 F.3d at 646.  The Complaint is bereft of any alleged communication or collaboration between UPHS and state or federal officials, focusing instead on the federal government's policy position encouraging COVID-19 vaccination, and its consideration of future regulation.  *See* Compl. ¶¶ 13–17.

---

for Plaintiff's claim for damages, *see* Part IV.A.5, *infra*, Plaintiff has failed to plead sufficient facts showing that UPHS is a government actor at either level.

While it is true that "significant [government] encouragement" in an allegedly unconstitutional action can support a finding of state action in certain limited circumstances, *see Glunk v. Noone*, 186 F. Supp. 3d 453, 460 (E.D. Pa. 2016) (quoting *Sullivan*, 526 U.S. at 52), the level of interaction necessary to find such "joint participation" is far more extensive than verbal support, as Plaintiff suggests.  Rather, the plaintiff must show (1) "the defendant acted together with or obtained significant aid from state officials;" (2) "the state and the private actor shared common purpose or intent;" and (3) there was "a meeting of the minds."  *Id.* (citing *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 278 (3d Cir. 1999); *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d Cir. 2005); *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)).  Plaintiff has not shown any of this.  Taken to its logical extreme, Plaintiff's absurd position would transform all private employers into state actors, provided their vaccine mandates were implemented subsequent to the government's publicly-stated endorsement of vaccination.

**2.      Disclosure of Vaccination Status is not "Compelled Political Speech."**

Count I fails not only because UPHS is a private institution, but also because Plaintiff's claim that disclosure of vaccination status constitutes "compelled political speech" is unsupported by logic or precedent.  Plaintiff devotes significant effort to alleging disclosure of one's vaccination status is "political," but ignores a more fundamental problem with its claim: namely, it is not "speech."

"Claims of compelled speech require proof that a government official forced an individual to engage in 'speech' protected under the First Amendment."  *Boyer v. Barry*, No. 1:030CV-1368, 2004 U.S. Dist. LEXIS 29896, at *15 (M.D. Pa. Feb. 24, 2004) (not available on Westlaw) (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505–06 (1969)).  "[T]he most useful guidepost is whether the statement or activity seeks to convey a certain message, either expressly or symbolically."  *Id.*  In the Third Circuit, conduct is expressive speech—and thus protected—

only when a plaintiff can demonstrate that he "intended subjectively . . . for his conduct to communicate to persons whom he expected to observe it (i.e., his intended audience)," and "observers understood the message the [plaintiff] intended his conduct to convey." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 161 (3d Cir. 2002).

Conduct is not "presumptively expressive," so the mere "'advancement of a plausible contention'" of expressive conduct is insufficient. *Id.* (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984)). For this reason, courts have consistently rejected similar compelled speech challenges to vaccination mandates. *See F.F. v. New York*, 194 A.D.3d 80, 90–91 (N.Y. App. Div. 2021) (religious objectors' compliance with state school vaccination law "is merely conduct, not constitutionally protected speech"; "the conduct allegedly compelled is not sufficiently expressive to trigger First Amendment protections"; and "plaintiffs remain free to express whatever views they may have on the subject of vaccination"); *W.B. v. Crossroads Academy-Central St.*, No. 4:19-cv-00682, 2019 WL 6257963, at *3 (W.D. Mo. Nov. 22, 2019) (completing a form to obtain a religious exemption to a vaccination mandate is not "compelled speech" because it "in no way comments on or endorses" a pro-vaccination message and "the filing of forms does not advance vaccination use"). UPHS is not aware of any authority to the contrary.

Also relevant here is the Third Circuit decision in *Doe v. Banos*, 416 F. App'x 185 (3d Cir. 2010). A school district adopted a "24/7" policy prohibiting students from using drugs or alcohol, and providing that for a student to participate in any extracurricular activity, both the student and a parent had to sign a "Student Activities Permission Form" acknowledging review of the drug and alcohol policy. A student's father who believed the school's policy was illegal alleged that requiring him to complete the form represented an unconstitutional "attempt to compel speech" with which he disagreed. *Id.* at 188. The Third Circuit affirmed the dismissal of his First

Amendment claim, finding the form merely provided permission for his daughter to participate in lacrosse and acknowledged his familiarity with the drug and alcohol policy.  It stressed that "[t]here is no evidence that John Doe's ability to criticize the 24/7 Policy has been inhibited in any manner whatsoever," and his signature on the required form "neither required him to indicate that he agreed with the substance of the 24/7 Policy nor prevented him from criticizing the policy in any way." *Id.* at 188–89.  The same is true here, as employees' confirmation of vaccination does not constitute agreement with the UPHS mandate, and employees are not prevented from criticizing that mandate.

Here, Plaintiff does not and cannot allege its members have been compelled to explicitly express any particular message, only that they must either "show[] proof of COVID-19 vaccination" or else disclose their "unvaccinated status."  Compl. ¶ 34.  In fact, Plaintiff expressly disclaims any expressive intent by at least some of its members, lamenting that members with medical or religious objections to the COVID-19 vaccine will be unfairly lumped in with "'rightwing extremists,' or worse."  *Id.*  Instead, Plaintiff makes the farfetched argument that COVID-19 vaccination status is of such an "intensely toxic political nature" that it inherently "holds the intent, weight, and social effect of partisan political speech."  Compl. ¶ 33.  There is obviously no authority for this outlandish proposition.  Plaintiff's own "political" objections to COVID-19 vaccination do not suffice to render an employee's disclosure of vaccination status "political speech."

The disclosure of vaccination status plainly does not constitute political speech endorsing a vaccination mandate, just as wearing a required face mask does not constitute expressive speech endorsing a mask requirement.  "Multiple federal courts since the start of the COVID-19 pandemic have rejected the argument that wearing or not wearing a mask is 'inherently expressive' conduct"

subject to First Amendment scrutiny. *Zinman v. Nova Se. Univ.*, No. 21-CV-60723, 2021 WL 4025722, at *14 (S.D. Fla. Aug. 30, 2021) (collecting cases). Squarely rejecting a compelled-speech challenge to a local mask mandate, the *Zinman* court concluded that mask wearing is not "inherently expressive" because:

> there is no great likelihood that such a message would be understood by one observing his conduct. There are myriad reasons why someone may not be wearing [a] mask—the person may qualify for a medical exemption, may be apathetic towards or unconcerned about COVID, may simply have forgotten their mask, or, indeed, may be attempting to send a political or religious message as Plaintiff contends. However, there is no way for an observer to know the reason why without additional explanation. *See Minnesota Voters Alliance v. Walz*, 492 F. Supp. 3d 822, 837–38 (D. Minn. 2020). As the Supreme Court explained in *FAIR*, "[t]he fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection . . . ."

*Id.* at *13 (quoting *Rumsfeld v. Forum for Acad. & Inst'l Rights*, 547 U.S. 47, 66 (2006)).

In other words, the very harm Plaintiff alleges—that its members will be compelled to make a "political" statement by confirming their vaccination status when there are various reasons they may not be vaccinated—explains why disclosure of their vaccination status is not inherently expressive political speech subject to the protections of the First Amendment. Since Plaintiff alleges no facts showing that UPHS is anything other than a private institution, or that its members are or have been compelled to engage in any expressive speech, its First Amendment claim should be dismissed.

### 3.    Plaintiff's Members Have No First Amendment Right to a Religious Exemption to the Vaccine Mandate.

Like Plaintiff's two other constitutional claims, the Free Exercise Clause claim in Count II is fatally flawed because UPHS is not a state actor. *See* Part IV.A.1, *supra*. What's more, numerous courts have already rejected Plaintiff's claim that UPHS "has a constitutional duty to grant reasonable religious exemptions . . . to COVID-19 vaccinations." Compl. ¶ 38. *See, e.g., Harris v. Univ. of Mass.*, No. 21-cv-11244, 2021 WL 3848012, at *7 (D. Mass. Aug. 27, 2021)

("As a preliminary matter, UMass is under no constitutional obligation to offer a religious exemption to its Vaccine Requirement."); *Klaassen v. Trustees of Ind. Univ.*, No. 1:21-CV-238, 2021 WL 3073926, at \*39 (N.D. Ind. July 18, 2021) ("[C]ourts have consistently held that schools that provided a religious exemption from mandatory vaccination requirements did so *above and beyond* that mandated by the Constitution."); *see also Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) ("Constitutionally, Nikolao has no right to a [religious] exemption." (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)).  Since UPHS is under no constitutional obligation to offer a religious exemption to its COVID-19 vaccination mandate, Plaintiff's Free Exercise Clause claim fails as a matter of law.[3]

### 4. Vaccination Mandates Do Not Violate the Fourteenth Amendment.

Plaintiff alleges, in conclusory fashion, "[b]y compelling employees to vaccinate under the threat of dismissal, UPHS violated the Fourteenth Amendment rights [to privacy and body autonomy] of Plaintiff's members."  Compl. ¶ 49.  In addition to the fact UPHS cannot have violated the Fourteenth Amendment because it is not a state actor, *see* Part IV.A.1, *supra,* Plaintiff's claim ignores the well-known, 116-year old precedent of *Jacobson v. Massachusetts*, 197 U.S. at 38–39, which clearly holds mandatory vaccination to prevent the spread of contagious diseases and to protect public health and safety does not violate the Fourteenth Amendment.  *See, e.g.*, *Messina v. Coll. of N.J.*, No. 21-17576, 2021 WL 4786114, at \*2–9 (D.N.J. Oct. 14, 2021) (citing numerous cases applying *Jacobson* to uphold COVID-19 mandates).  As the *Messina* court recently stated, "other courts—including this one—reviewed similar [Fourteenth Amendment] challenges to COVID-19 vaccination policies and have uniformly concluded that *Jacobson*

---

[3]    Notwithstanding, UPHS affords employees the opportunity to apply for a religious exemption to COVID-19 vaccination, just as it has long done for other types of vaccinations.  *See* Compl. ¶ 39.

controls." *Id.* at *8.  Because Plaintiff's Fourteenth Amendment claim is precluded by Supreme Court precedent, it should be dismissed.

### 5.      Plaintiff's Claim for Damages on Counts I–III is Legally Deficient.

Finally, although Plaintiff seeks "compensatory damages" for its members, *see* Compl., Prayer for Relief, damages are not available for its constitutional claims.  Beyond one random reference, devoid of factual support, to unspecified "encouragement" for vaccine mandates by the State of Pennsylvania, Compl. ¶ 26, Plaintiff does not contend UPHS's purported "state action" was on behalf of Pennsylvania or any local government.  All of Plaintiff's factual allegations pertain to federal, not state, conduct.

To the extent Plaintiff seeks damages against UPHS for alleged constitutional violations as an agent of the *federal* government, it faces an insuperable obstacle.  Suits for damages against federal officers for violation of constitutional rights are limited to three specific circumstances laid out in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny, none of which is applicable here.  *See Davis v. Holder*, 994 F. Supp. 2d 719, 723–25 (W.D. Pa. 2014) (noting that the Supreme Court has "'consistently refused to extend *Bivens* liability to any new context or new category of defendants'" (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001))).  More to the point, "the Third Circuit has repeatedly concluded that a plaintiff cannot bring a *Bivens* claim against a private corporation."  *Davis*, 994 F. Supp. 2d at 724.  Accordingly, Plaintiff has failed to state any claim for damages based on the alleged constitutional violations.

### B.      Plaintiff Fails to Satisfy the Requirements for Organizational Standing.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  The case-or-

controversy requirement is enforced through several justiciability doctrines, the "most important" of which is standing. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). "Even at the motion to dismiss stage . . . [i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record." *N.J. Physicians, Inc. v. President of the United States*, 653 F.3d 234, 239 (3d Cir. 2011) (internal quotation omitted).

Organizational standing is "substantially more difficult to establish" than individual standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation omitted). An organization has standing to sue on behalf of its members only if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015). As a threshold matter, Plaintiff has not pleaded sufficient facts demonstrating that it has organizational standing under the first prong of the test.

The first requirement of organizational standing, "that at least one of the organization's members would have standing to sue on his own, is grounded on Article III as an element of the constitutional requirement of a case or controversy." *United Food & Comm'l Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 554–55 (1996). To meet the first prong, the organization must "make specific allegations establishing *that at least one identified member had suffered or would suffer harm.*" *Am. Chiropractic Ass'n*, 625 F. App'x at 176 (emphasis added); *accord Summers*, 555 U.S. at 498–499. Plaintiff has not done so. Plaintiff does not identify even a single member in the Complaint, much less does it identify any member who has suffered actual injury entitling him or her to sue in their own right.

Absent identification of an injured member, Plaintiff cannot demonstrate injury in fact, and therefore cannot meet its burden of showing the Court it has standing to maintain this lawsuit. *See Summers*, 555 U.S. at 499 ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm—surely not a difficult task here, when so many thousands are alleged to have been harmed."); *Nationwide Ins. Indep. Contrs. Ass'n v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 63 (3d Cir. 2013) (affirming district court's finding of no organizational standing where the membership association had not identified a member who suffered specified harm); *N.J. Physicians*, 653 F.3d at 241 (affirming district court's finding that entity lacked organizational standing where the only member identified in the Complaint did not suffer an injury in fact); *Chamber of Commerce v. City of Phila.*, No. 17-1548, 2017 WL 11544778, at *3–4 (E.D. Pa. May 30, 2017) ("I thus conclude that *Summers* and Third Circuit precedent require the identification of a member who has suffered or will suffer harm in cases brought by an association on behalf of its members. . . . The Chamber's broad allegations about its members simply do not meet the requirements of *Summers*.").[4]

Plaintiff's failure to allege sufficient facts establishing organizational standing is fatal to

---

[4]     Plaintiff has similarly failed to make specific allegations establishing that its interests in this litigation are "germane" to its organizational purpose, or that pursuit of its claims would not require individual member participation. *See Am. Chiropractic Ass'n*, 625 F. App'x at 176. Aside from alleging it is a "corporation formed by, and representing the interests of, employees and former employees of UPHS," Plaintiff makes no allegations regarding its organizational purpose. Compl. ¶ 9. Third Circuit precedent is also clear that organizations, like Plaintiff, "generally" cannot sue for monetary damages because of the fact-intensive, individualized inquiry inherent in proving each member's damages. *See Am. Chiropractic Ass'n*, 625 F. App'x at 176–77; *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 289 (3d Cir. 2014) (finding no organizational standing where "individual student plaintiffs are seeking monetary reimbursement" such that "organizational representation of the individual plaintiffs [would be] insufficient without their personal participation in this litigation").

all of its claims and compels dismissal under Rule 12(b)(1).

C.   **Plaintiff Fails to State a Claim for Wrongful Dismissal Under Pennsylvania Law.**

In Count IV, Plaintiff alleges a "wrongful dismissal" claim based on "Pennsylvania public policy."   Like the preceding constitutional claims, this claim is legally deficient for multiple reasons.   As discussed above, Plaintiff lacks organizational standing to assert this claim, as the Complaint does not identify any member who was dismissed because of non-compliance with the vaccination mandate.   In addition, Plaintiff's claim rests on the notion that UPHS allegedly violated "Pennsylvania religious freedom law" when it terminated non-compliant employees, Compl. ¶ 53, which constitutes a claim of unlawful religious discrimination that should have been brought under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a) (prohibiting employer discrimination because of an individual's "religious creed").   The PHRA requires exhaustion of administrative remedies, which applies here even though Plaintiff has sought to invoke the common law, rather than the PHRA.   *See Clay v. Adv. Computer Applications*, 559 A.2d 917, 920 (Pa. 1989).   Plaintiff has not satisfied that exhaustion requirement.   In addition, Plaintiff has not alleged facts sufficient to show that UPHS's vaccination mandate violates Pennsylvania public policy and thus overcomes the at-will employment doctrine.

1.   **Plaintiff's Wrongful Dismissal Claim is Preempted by the Pennsylvania Human Relations Act.**

Count IV is an employment discrimination claim in disguise.   Plaintiff specifically alleges the dismissal of certain unidentified members violated "Pennsylvania['s] religious freedom law." Compl. ¶ 53.   That claim should have been brought under the PHRA.   *See Weaver v. Harpster*, 975 A.2d 555, 567 (Pa. 2009) ("[T]here is no basis for belief that there was intended to be broad and unrestricted access to civil actions, outside of the PHRA, alleging discriminatory termination of at-will employment. . . . We find no basis . . . to create an independent cause of action for

16

termination of an at-will employee outside of the remedies established by the legislature through the PHRA."); *Wolks v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 223–24 (3d Cir. 1984) (where comprehensive administrative state and federal statutory remedy is available to plaintiff to obtain redress for sexual harassment, no common law action will lie for a wrongful discharge claim under Pennsylvania law); *Shaffer v. Nat'l Can Corp.*, 565 F. Supp. 909, 913 (E.D. Pa. 1983) (finding wrongful discharge claim should have been brought pursuant to PHRA because "[t]he interests sought to be vindicated by this cause of action are identical to those protected by the PHRA"); *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 344 (E.D. Pa. 1994) ("Defendants are correct that the PHRA preempts parties from bringing common law claims for wrongful discharge based on claims of discrimination because the remedies of the PHRA are exclusive.").  The court held the same in *Krushinski v. Roadway Express, Inc.*, 627 F. Supp. 934, 937–38 (M.D. Pa. 1985), when it dismissed Plaintiff's wrongful discharge claim "due to his religious beliefs" because the PHRA provided the appropriate statutory protection.

Plaintiff's wrongful dismissal claim, though clothed in common law garb, is nonetheless subject to the PHRA requirement of exhaustion of administrative remedies.  *See* 43 P.S. §§ 959(h), 962(b).  As the Pennsylvania Supreme Court held long ago in *Clay v. Advanced Computer Applications*, "[a]llowing a discharged employee to commence an action in the courts without first exhausting administrative remedies would be logically inconsistent with the legislature's having created the PHRC to function as an efficient mechanism for handling such disputes."  559 A.2d at 919; *see also id*. at 920 (holding "the statutory scheme would be frustrated if aggrieved employees were permitted to circumvent the PHRC by simply filing claims in court" under the common law); *accord Dee v. Marriott Int'l, Inc*., No. 99-2459, 1999 WL 975125, at *5 (E.D. Pa. Oct. 6, 1999) (plaintiff's common law claim of wrongful discharge in violation of public policy dismissed

because, under *Clay*, plaintiff was required to exhaust administrative remedies under PHRA).

### 2.   Plaintiff Fails to Allege a Violation of Clearly Stated Public Policy of the Commonwealth.

Yet another basis for dismissal of Count IV is Plaintiff's failure to demonstrate the applicability of the public policy exception to the at-will employment doctrine. That doctrine provides "an employer may terminate an employee for any reason, unless restrained by contract." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000). As such, there is an "extremely strong" "presumption" that all non-contractual employment relations are "at-will." *Id.* at 287. "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Weaver v. Harpster*, 975 A.2d at 562. In explaining the public policy required to overcome the protections afforded to employers by the at-will doctrine, the Pennsylvania Supreme Court has held:

> An employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy. In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. Rather, it is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it. Only in the clearest of cases may a court make public policy the basis of its decision. To determine the public policy of the Commonwealth, we examine the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature.

*Id.* at 563 (internal citation omitted); *see also id.* ("[E]xceptions to at-will employment should be few and carefully sculpted so as not to erode an employer's inherent right to operate its business as it chooses.").

The public policy exception to the at-will employment doctrine is narrowly applied and has only been recognized in very limited circumstances. Pennsylvania courts have found exceptions to the at-will doctrine where the employer: "(1) compels the employee to engage in

criminal activity; (2) prevents the employee from complying with a duty imposed by statute; or

(3) discharges the employee when a statute expressly prohibits such termination." *Warner v.*

*United Nat. Foods, Inc.*, 513 F. Supp. 3d 477, 483 (M.D. Pa. 2021); *Mikhail v. Pa. Org. for Women*

*in Early Recovery*, 63 A.3d 313, 317 (Pa. Super. 2013); *Donahue v. Fed. Express Corp.*, 753 A.2d

238, 244 (Pa. Super. 2000).   Wrongful discharge claims have also survived where employment

termination was in retaliation for filing a claim for workers' compensation or unemployment

benefits.   *See Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 517 (Pa. 2005); *Highhouse*

*v. Avery Transp.*, 660 A.2d 1374, 1378 (Pa. Super. 1995).

Plaintiff has not alleged facts showing any of the foregoing public policy exceptions apply

here.   To the contrary, as shown above, numerous courts have upheld COVID-19 vaccination

mandates as consistent with the Supreme Court's decision in *Jacobson v. Massachusetts*, where

the Court emphasized the overriding public policy interest in vaccinations to prevent the spread of

contagious diseases and thus preserve public health and safety.   As aptly stated by the court in

*Beckerich*, which upheld a COVID-19 vaccine mandate by a private hospital:

> Actual liberty for all of us cannot exist where individual liberties override potential
> injury done to others.   For that reason, the state of Massachusetts was permitted to
> impose a vaccine mandate without exception, and with a penalty of imprisonment,
> during the smallpox pandemic.   [*Jacobson*, 197 U.S. at 26.]   The case before this
> Court deals with a private actor, and with no actual coercion.   Being substantially
> less restrictive than the *Jacobson* mandate, and being enacted by a private actor,
> Defendants' policy is well within the confines of the law, and it appropriately
> balances the public interests with individual liberties.

*Beckerich*, 2021 WL 4398027, at *8.   Other courts upholding hospitals' COVID-19 vaccination

mandates have similarly emphasized the importance of protecting patients' health.   *See, e.g.,*

*Valdez v. Grisham*, No. 21-cv-783, 2021 WL 4145746, at *7 (D.N.M. Sept. 13, 2021) ("[B]ased

on the scientific and medical research, Defendants have determined that vaccinating health care

personnel is the 'best tool' to protect patients who come into close contact with them—patients

who 'may be extremely vulnerable to the virus and at high risk for poor outcomes.'"); *Bridges v. Houston Methodist Hosp.*, No. 21-cv-1774, 2021 WL 2399994, at *2 (S. D. Tex. June 12, 2021) ("Methodist is trying to do their business of saving lives without giving them the COVID-19 virus. It is a choice made to keep staff, patients, and their families safer.  Bridges can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else.").  The UPHS vaccination mandate comports fully with Pennsylvania public policy.[5]

## V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[5]    Indeed, discussing mandatory vaccination against smallpox, the Pennsylvania Supreme Court in *Stull v. Reber*, 64 A. 419, 421 (Pa. 1906), stated:

> At present the vast preponderance of opinion among intelligent and educated people, under the guidance of the best medical authority, is that vaccination is a highly useful ameliorative if not always a preventive of one of the greatest scourges that have in past times afflicted humanity, and that the regulation of it by statute is not only a justifiable but a wise and beneficent exertion of the police power over the public health.

Respectfully submitted,

*/s/ Aliza R. Karetnick*
Aliza R. Karetnick (Attorney I.D. No. 82395)
Burt M. Rublin (Attorney I.D. No. 32444)
Diana M. Joskowicz (Attorney I.D. No. 325285)
Shawn F. Summers (Attorney I.D. No. 327471)
karetnicka@ballardspahr.com
rublin@ballardspahr.com
joskowiczd@ballardspahr.com
summerss@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500

*Attorneys for Defendant University of Pennsylvania
Health System*

Date:   November 3, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2021, I caused true and correct copies of the foregoing Motion to Dismiss Complaint and accompanying Memorandum of Law to be served upon all counsel of record by ECF filing.


Date: November 3, 2021                    */s/ Aliza R. Karetnick*_____
                                          Aliza R. Karetnick