# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA INFORMED CONSENT ADVOCATES, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM; SCOTT KETCHAM, UNITED STATES SECRETARY OF LABOR; XAVIER BECERRA, UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES**, <br><br> Defendants. | CIVIL ACTION NO. 5:21-CV-04415-JLS |

## REPLY OF DEFENDANT UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff's Opposition to University of Pennsylvania Health System's ("UPHS") Motion to Dismiss (the "Opposition" or "Pl.'s Opp."), filed seven days late,[1] is long on rhetoric, but woefully short on case law supporting Plaintiff's deficient claims. The Opposition misstates the applicable standard on a motion to dismiss, and fails entirely to address, much less distinguish or rebut, the cases cited in UPHS's memorandum of law. Indeed, the Opposition plainly betrays Plaintiff's fundamental misapprehension of applicable law, never mind the rights afforded under the Constitution.

*First*, Plaintiff is profoundly confused about the standard governing a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Instead of demonstrating that the allegations in the Complaint state plausible claims for relief, Plaintiff dedicates the Opposition to rehashing bald legal conclusions without citation to supporting precedents, and arguing for discovery in furtherance of its claims.

*Second*, Plaintiff's very brief discussion of the state actor issue offers no law to rebut the many cases cited by UPHS demonstrating it is not a state actor. Rather, Plaintiff simply asks for discovery, as if it will talismanically cure facially implausible and legally flawed claims. Courts have long recognized that where, as here, allegations that a defendant is a state actor are deficient, dismissal under Rule 12(b)(6) is warranted.

*Third*, Plaintiff's cursory discussion of its compelled speech claim neglects to address the many cases cited by UPHS showing compliance with the vaccination mandate is non-expressive conduct, not protected speech. Not surprisingly, Plaintiff fails to cite even a single case supporting

---

[1] UPHS filed and served via ECF its Motion to Dismiss on November 3, 2021. ECF No. 4. Local Rule 7.1(c) provides fourteen days—in this case, November 17—for Plaintiff to respond. Without offering any explanation for its failure to meet that deadline, Plaintiff filed its Opposition seven days late, on the evening of November 24, the day before Thanksgiving.

its far-fetched argument.

*Fourth*, Plaintiff's claim that the religious exemption is being applied by UPHS in an arbitrary and discriminatory manner should have been brought pursuant to Title VII, yet Plaintiff has not identified a single member who has fulfilled the statutory obligation to exhaust administrative remedies.

*Fifth*, Plaintiff's gesture in the direction of the privacy and bodily autonomy case law does not change the fact that its Fourteenth Amendment claim is completely foreclosed by *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), as an increasing number of courts around the country have recognized in similar COVID 19 vaccine cases.

*Sixth*, Plaintiff has not even attempted to distinguish the Supreme Court and Third Circuit cases cited by UPHS holding that organizational standing requires identification of at least one member who allegedly suffered harm, which Plaintiff admits it has failed to do. Once again, Plaintiff does not cite any cases supporting its argument that organizational standing exists here.

*Seventh*, the wrongful dismissal claim is of a piece with the rest of the Complaint – illogical and spurious. That claim is preempted by the Pennsylvania Human Relations Act which, like Title VII, requires exhaustion of administrative remedies.

UPHS's Motion to Dismiss should be granted.

## A. **Plaintiff Relies on an Outdated Legal Standard on a Motion to Dismiss.**

Plaintiff argues the Complaint should be allowed to proceed unless there is "no set of facts in support of its claim which would entitle it to relief." Pl.'s Opp. at 7 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Plaintiff's reliance on *Conley* is obviously misplaced. Fourteen years ago, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007), the Supreme Court rejected *Conley*, stating that "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on

2

an accepted pleading standard." The current standard requires *facial plausibility*, which in turn requires a plaintiff to provide more than "threadbare" allegations or legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Here, both the Complaint and Opposition contain nothing more than threadbare allegations and unsupported legal conclusions. *See* Pl.'s Opp. at 7–8 (arguing "upon information and belief" UPHS is a state actor because it "acted according to the direction and the encouragement of various federal agencies"); Pl.'s Opp. at 10 (arguing "upon information and belief" that "UPHS has selectively applied their own religious exemption standards, and arbitrarily denied employees seemingly based on their perceived value of the employee"); Pl.'s Opp. at 12 (arguing UPHS is an agent of the Commonwealth of Pennsylvania and the federal government based "upon information and belief" as opposed to alleging actual conduct); Pl.'s Opp. at 9 (asking the Court to just accept, without citation to *any* supporting cases, the unprecedented argument that disclosing one's vaccination status has "acquired the social and political effect and understanding of an expressive act," such that it is compelled political speech); Pl.'s Opp. at 10–11 (citing no allegations from the Complaint or supporting cases, but arguing UPHS's religious exemption is not narrowly tailored to achieve any legitimate and compelling state interest).

Rather than demonstrate the plausibility of its claims, as required by *Twombly* and *Iqbal*, Plaintiff's Opposition simply reiterates the legal conclusions in the Complaint. Plaintiff does not bother to address, let alone distinguish, the many cases cited by UPHS in support of dismissal, or to provide supporting cases of its own. Dismissal is clearly warranted under these circumstances.

### B. UPHS Is Not a State Actor.

Plaintiff's evident confusion about what it must demonstrate to defeat a motion to dismiss under Rule 12(b)(6) carries through to its insistence that it should be allowed to take discovery on whether UPHS is a state actor. But "'Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). Neither would discovery save Plaintiff's legally defective claims. State actor status is a question of law properly resolved on a motion to dismiss. *See Mahmood v. Nat'l Bd. of Med. Examiners*, No. 12-1544, 2012 WL 2368462, at *2–3 (E.D. Pa. June 21, 2012) (noting that state actor status, as the "overarching requirement" for constitutional claims, is "a question of law," and accordingly dismissing constitutional claims against private testing company); *see also Federoff v. Geisinger Clinic*, No. 4:21-CV-01903, 2021 WL 5494289, at *4 (M.D. Pa. Nov. 23, 2021) (rejecting employees' request for injunctive relief against private hospital, reasoning "[it] is not a state actor [and] therefore cannot violate the Employees' rights under the Free Exercise and Equal Protection Clauses.").

Plaintiff's perfunctory two-paragraph discussion of the state actor issue neither addresses *any* of the cases cited by UPHS, nor cites *any* cases of its own suggesting UPHS should be deemed a state actor. Plaintiff has not, because it cannot, plead facts to support finding UPHS a state actor under any of the three applicable tests for determining state actor status. *See* Def.'s Mem. at 4–8. In fact, Plaintiff thumbs its nose at the tests, failing to acknowledge them at all.

Instead, Plaintiff argues that UPHS's "work is funded by federal and/or state grants," Pl.'s Opp. at 8, allegedly transforming it from a private hospital to a state actor. But courts in this district and elsewhere have repeatedly and directly rejected Plaintiff's baseless argument. *See Hall v. Horizon House*, 414 F. Supp. 3d 720, 722 (E.D. Pa. 2019) (collecting cases); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-105, 2021 WL 4398027, at *3 (E.D. Ky. Sep. 24, 2021) (upholding

COVID 19 mandate and stating that "[p]rivate hospitals, no matter how much federal funding they may receive, are generally not state actors for purposes of constitutional questions."); *Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:21-cv-597, 2021 WL 4504245, at *3 (S.D. Ohio Sept. 30, 2021) (same).

Moreover, the Supreme Court and Third Circuit have long held that just because a private entity accepts government funding does not make it a state actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1005–12 (1982) (determining private nursing home is not state actor despite extensive state regulation and 90% of fees subsidized by state); *Rendell-Baker v. Kohn*, 457 U.S. 830, 839–42 (1982) (finding private school that treats students with drug/alcohol problems not state actor despite operating under contract with the state and receiving 90% state funding); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) ("[I]t is clear that Stetson's receipt of government funds did not make it a state actor."); s*ee also Geisinger*, No. 4:21-CV-01903, 2021 WL 5494289, at *5 ("[W]hile a private party's conduct can wade into state action," the vaccination policy was adopted "[w]ithout any official mandate from the federal or state government.").

Because UPHS is not a state actor, all of the constitutional claims fail as a matter of law.

**C.    Plaintiff Fails to State Viable Constitutional Claims.**

Plaintiff's constitutional claims should be dismissed not only because, as a threshold matter, UPHS is not a state actor, but also because they are substantively deficient on other grounds as well.

1.    Disclosure of Vaccination Status Is Not "Compelled Political Speech"

Plaintiff's cursory discussion of its compelled speech claim, aside from mischaracterizing UPHS's objections as a "dispute of fact," is nothing more than a request to proceed based solely on Plaintiff's say-so. Plaintiff makes no attempt to rebut or distinguish UPHS's ample authority demonstrating that compliance with vaccine mandates (and mask mandates, in the COVID 19

5

context) is not speech, much less compelled political speech. *See* Def.'s Mem. at 8–11. In keeping with its practice of making unsupported arguments, Plaintiff does not cite *any* cases to back its spurious claim that the vaccine mandate involves compelled political speech. As with the claim that UPHS is a state actor, there is no amount of discovery Plaintiff can amass that will overcome the obvious legal deficiencies of these claims. Plaintiff's speech claim should be dismissed.

2. Plaintiff's Members Have No First Amendment Right to a Religious Vaccine Exemption and Must Exhaust Administrative Remedies

Although UPHS is under no constitutional obligation to offer a religious exemption to its longstanding vaccination mandate, it has done so anyway. Def.'s Mem. at 11–12. Plaintiff's argument that the religious exemption is arbitrarily and discriminatorily applied is, in substance, a Title VII claim that may proceed only after administrative remedies have been exhausted.[2] *See Abramson v. William Paterson Coll.*, 260 F.3d 265, 281 (3d Cir. 2001) ("Title VII explicitly protects employees from adverse employment actions on the basis of religion . . . ."); *Muñoz v. Armstrong Flooring, Inc.*, No. 18-1209, 2019 WL 2357759, at *4 (E.D. Pa. June 4, 2019) ("When seeking redress for alleged discrimination, the plaintiff must exhaust all administrative remedies before seeking relief in federal court."); *see also* Pl.'s Opp. at 9 (stating Title VII requires reasonable religious accommodations for deeply held, bona fide religious beliefs); Compl. ¶ 12 (admitting Plaintiff's members are or were employed by UPHS, which is covered by Title VII).

---

[2] Arguing arbitrary application of UPHS's religious exemption, the Opposition contains newly-asserted allegations outside the four corners of the Complaint: (1) "[n]urses are more likely to be denied exemptions than doctors are," Pl.'s Opp. at 10; (2) "employees nearing their pension dates are more likely to be denied exemptions than newer employees," *id.*; and (3) UPHS is using the pandemic "as an opportunity to 'cull the ranks' of problematic or 'costly' employees," *id.* Those allegations should be disregarded. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Brady v. The Middle East Forum*, No. 21-2252, 2021 WL 5003335, at *6 n. 40 (E.D. Pa. Oct. 28, 2021) ("She cannot amend her complaint by asserting new facts in her response to Defendants' motion to dismiss.").

Plaintiff does not identify any member who has initiated, much less exhausted, administrative remedies under Title VII. Even if it had, Plaintiff does not allege members "held a sincere religious belief that conflicted with a job requirement." *See Geisinger*, No. 4:21-CV-01903, 2021 WL 5494289, at *8–9 (rejecting Title VII claim where "the pleadings and briefing fail to detail how [plaintiffs'] opposition to Geisinger's [vaccine] policy is rooted in a religious belief"). These flaws are fatal, and Plaintiff's Free Exercise claim in Count II should be dismissed.

          3.      <u>Plaintiff's Fourteenth Amendment Claim is Foreclosed By *Jacobson*</u>

Plaintiff's failure to even mention the directly controlling Supreme Court precedent, *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which completely forecloses its Fourteenth Amendment claim, is egregious. This is particularly so as a growing number of courts around the country have explicitly recognized *Jacobson* as controlling in the context of COVID 19 mandates. See Def.'s Mem. at 12–13. Indeed, on November 10, 2021, in an almost identical case against a private hospital system, the Northern District of Florida held that "*Jacobson* forecloses the [plaintiffs'] 14th Amendment claim." Hearing Tr. at 11:20–21, *Darling v. Sacred Heart Health Sys., Inc.*, No. 3:21-CV-1787 (N.D. Fla. Nov. 10, 2021) (Ex. A). The court reasoned that the circumstances in *Jacobson* —"a vaccine requirement during a pandemic"— were "materially the same" as COVID 19 vaccine mandate cases. *Id.* at 12:10–12.

The only case cited by Plaintiff as supposed support for its Fourteenth Amendment claim is *Planned Parenthood v. Casey* (Plaintiff does not even provide a pincite, *see* Pl.'s Opp. at 11). Plaintiff contends *Casey* underscores "[t]he right to privacy and bodily autonomy as found in the Fourteenth Amendment . . . is settled precedent." *Id.* However, the right to privacy and bodily autonomy is not in dispute in this litigation. Rather, as the court in *Darling* and countless others have recognized over the past year, the question is whether a state actor (which UPHS is not) violates the Constitution by instituting a vaccine mandate during an infectious disease epidemic.

7

This issue has been conclusively settled by *Jacobson* and its progeny for more than a century: it does not. Plaintiff's Fourteenth Amendment claim should be dismissed.

### D.  **Plaintiff Lacks Organizational Standing.**

As set forth in UPHS's opening brief, *see* Def.'s Mem. at 14–15, the Supreme Court and Third Circuit have repeatedly held that "plaintiffs claiming an organizational standing [are required] to identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *accord Nationwide Ins. Indep. Contrs. Ass'n v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 63 (3d Cir. 2013); *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015); *N.J. Physicians, Inc. v. President of the United States*, 653 F.3d 234, 241 (3d Cir. 2011). Plaintiff simply ignores these controlling cases, choosing instead to riff without legal support. What's more, Plaintiff concedes its Complaint does not identify any member who suffered the alleged harm. *See* Pl.'s Opp. at 13 (admitting it "did not plead with particularity any of the individual circumstances of members of Plaintiff"). Plaintiff's admitted failure to fulfill this essential requirement of organizational standing provides yet another basis for dismissal of the Complaint.

### E.  **Plaintiff's Public Policy Argument Fails on Its Own Terms.**

Pennsylvania allows claims for wrongful dismissal against public policy only in the most obvious and narrowly limited cases, such as when an employer compels the employee to engage in criminal activity. *See* Def.'s Mem. at 18–20. In an effort to meet this exceedingly high standard, Plaintiff resorts to fanciful claims of "a new era of wanton corporate abuse," where companies act to "advance [their] corporate bottom line." Pl.'s Opp. at 14. This absurd argument sums up the illogic of Plaintiff's entire case: why would a *non-profit* hospital system such as UPHS need to implement a vaccine mandate to "'cull the ranks' of problematic or 'costly' employees," Pl.'s Opp. at 10, when it could simply fire these *at-will* employees at any time?

Worse, Plaintiff's argument is scurrilous. For more than 20 months, UPHS has been on the front lines of a once-in-a-century pandemic, and has done everything in its power to protect its patients and staff, including implementation of the COVID 19 vaccine mandate. Plaintiff and its members may have a disagreement with that mandate, but nothing in Plaintiff's grab-bag Complaint supports a cognizable claim of a violation of Pennsylvania public policy. And, in any event, as shown in UPHS's prior brief, the wrongful dismissal claim in Count IV is preempted by the Pennsylvania Human Relations Act which, like Title VII, requires exhaustion of administrative remedies. *See Geisinger*, No. 4:21-CV-01903, 2021 WL 5494289, at *11–12 ("So for this Court to even entertain a claim under [the PHRA], the Geisinger Employees must have lodged a complaint with the Pennsylvania Human Relations Commission and given them at least one year to act on the complaint." (citing 43 P.S. § 962(c)(1))).

"Federal courts are empowered to redress unlawful conduct—not conduct which parties merely perceive as unfair or incorrect." *Id.* at *13. Here, Plaintiff has not shown it is entitled to relief as a matter of law. This Court should grant UPHS's Motion and dismiss Plaintiff's baseless Complaint with prejudice.

          Respectfully submitted,

          /s/ *Aliza R. Karetnick*
          Aliza R. Karetnick (Attorney I.D. No. 82395)
          Burt M. Rublin (Attorney I.D. No. 32444)
          Diana M. Joskowicz (Attorney I.D. No. 325285)
          Shawn F. Summers (Attorney I.D. No. 327471)
          karetnicka@ballardspahr.com
          rublin@ballardspahr.com
          joskowiczd@ballardspahr.com
          summerss@ballardspahr.com
          BALLARD SPAHR LLP
          1735 Market Street, 51st Floor
          Philadelphia, PA  19103-7599
          Telephone: 215.665.8500
          *Attorneys for University of Pennsylvania Health System*

Date:   December 1, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2021, I caused true and correct copies of the foregoing Reply of University of Pennsylvania Health System in Support of its Motion to Dismiss to be served upon all counsel of record by ECF filing.

Date: December 1, 2021                              */s/ Aliza R. Karetnick*_____
                                                                  Aliza R. Karetnick